UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CARL MARQUIS MADDOX, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 2:25-cv-00261-JRO-MKK |
| | ) |
| J. WADAS, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING HABEAS PETITION AND MOTION FOR SUMMARY JUDGEMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Carl Marquis Maddox is incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), serving a sentence imposed by the U.S. District Court for the District of Minnesota. He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") refusal to grant him certain time credits under the First Step Act of 2018 ("FSA"). He also filed a motion for summary judgment. Dkt. 13.

For the reasons stated below, Maddox has identified no errors in his sentencing calculation. Under 18 U.S.C. § 3632(d)(4)(D)(lxv), Maddox is ineligible for time credit under the FSA. And the BOP's purported misrepresentations to him stating otherwise do not equitably estop the government from denying Maddox time credits that Congress has plainly prohibited to him.

Accordingly, his habeas petition, dkt. [1], is **DENIED**, and his motion for summary judgment, dkt. [13], is **DENIED**.

## I.

## LEGAL STANDARD

"[C]hallenges to the computation of a sentence must be brought under 28 U.S.C. § 2241." *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997). The Attorney General, acting through the BOP, is tasked with administering and calculating the sentences of federal prisoners. *See United States v. Wilson*, 503 U.S. 329, 334–35 (1992); 18 U.S.C. § 3621(a). "A necessary predicate for the granting of federal habeas relief . . . is a determination by the federal court that [Petitioner's] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).

## II.

## BACKGROUND

Maddox is currently serving a 144-month term of imprisonment, and the BOP calculates his projected release date as July 3, 2028, including good-conduct time credits. *See* https://www.bop.gov/inmateloc/ (last visited Mar. 26, 2026).

In 2018, Maddox pleaded guilty to possession with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin and some quantity of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Dkts. 9-3, 9-4. As part of his plea agreement, he stipulated that he "should receive a two-level enhancement for the defendant's role in the offense," with a citation to U.S.S.G. § 3B1.1(b). Dkt. 9-3 at 3–4. His presentence investigation report ("PSR") also

2

states that, "The parties agree that Maddox should receive a 2-level enhancement for role. USSG § 3B1.1(b)." Dkt. 10 at 6. The section of the PSR calculating his base offense level also indicates that he received a two-level increase under U.S.S.G. § 3B1.1(c) because he "organized and led [two other individuals] in regard to the drug distribution." *Id.* at 12. After his sentencing, Maddox filed a motion asking his sentencing court to amend his PSR to remove any reference to a leader or organizer role because a conspiracy charge was dropped as part of his plea agreement. *United States v. Maddox*, No. 0:18-cr-00014-JWB-BRT, dkt. 200 (D. Minn. Nov. 13, 2024). The sentencing court denied the motion because the reference to Maddox having a manager or organizer role was "supported and not objected to." *Id.*; Dkt. 205 (D. Minn. Jan. 7, 2025).

At issue in Maddox's habeas petition is his eligibility for certain time credits that can be earned under the FSA, which the Court refers to as "FSA time credits." As discussed in more detail below, those credits may be earned by participating in certain programming or other productive activities at the prison. Respondent presents evidence showing that Maddox's eligibility for FSA credits has been reviewed multiple times since he arrived in BOP custody. Dkt. 9-1 at 4. Specifically, between December 1, 2019, and February 28, 2021, his status was reviewed four times, and he was deemed ineligible to earn FSA time credits. *Id.* at 3; Dkt. 9-5.

Respondent has submitted a declaration from FCI Terre Haute's Case Management Coordinator showing that, on February 28, 2021, a "previous institution" erroneously changed Maddox's status to show that he was eligible to

3

earn FSA credits.  Dkt. 9-1 at 4–5; dkt. 9-5 at 3.  Respondent's brief states that the change occurred at the Medical Center for Federal Prisoners in Springfield, Missouri ("FMCP Springfield").  Dkt. 9 at 2.  After that, BOP records showed that Maddox was earning FSA time credits by completing classes and engaging in other productive activities, which in turn moved his projected release date up by a year.  *See, e.g.*, Dkt. 9-1 at 5; Dkt. 1-1 at 6.

After Maddox was transferred to FCI Terre Haute BOP staff reviewed his FSA credit eligibility again.  Dkt. 9-1 at 5; Dkt. 9-5 at 2.  At that time, the BOP found the error and updated his records to show that he was not eligible to earn FSA time credits.  Dkt. 9-1 at 5.  Consequently, the BOP's records currently indicate that he has not earned any FSA time credits.  Dkt. 9-7.

Maddox asserts that the first time he was told he was ineligible for FSA time credits was when he arrived at FCI Terre Haute.  Dkt. 15 at 1.  He represents that he relied on the advice of case managers at multiple prisons to complete programming and maintain a prison job so that he could earn FSA time credits.  *Id.* at 2–3.  He also notes that he received an "EBRR incentive award" in August 2023.  *See* dkt. 15-1 at 2.

Finally, Maddox disputes Respondent's assertion that staff at FMCP Springfield erroneously changed his FSA credit status, stating

> The Respondent's Att. 8 proves the Petitioner was located at Morgantown when "FTC ELIGIBLE REVIEWED" took place . . . . [I]t should also be noted that it is well known that case managers at any facility are not authorized to change an inmate's actual release date. "Exhibit A" proves that it was BOP officials in "Grand Prairie" who awarded the petitioner with a 365 day reduction in his sentence that changed his outdate

4

> from 2028 to 2027. . . .   Springfield did not erroneously change his status in the computer, evidence provided by the respondent and petitioner verifies that previous facilities including BOP officials in Grand Prairie had awarded FSA Credits and EBRR INCENTIVES as well

Dkt. 15 at 2–4 (spelling errors in original corrected).

## III.

## DISCUSSION

Under the FSA, inmates may earn certain incentives for completing evidence-based recidivism reduction (EBRR) programing and activities.   18 U.S.C. § 3632(d)(1)–(3).  *See also* BOP Program Statement 522.01, "First Step Act Program Incentives," *available at* www.bop.gov/policy/progstat/5220.01.pdf (last visited Mar. 26, 2026).  The FSA also allows inmates to earn time credits for completing EBRR programming and activities.   18 U.S.C. § 3632(d)(4).  However, not all inmates who complete EBRR programming and activities are eligible for FSA time credits.   The statute explicitly forbids inmates serving sentences for convictions of certain crimes from receiving FSA time credits. 18 U.S.C. § 3632(d)(4)(D).

The BOP is denying Maddox the benefit of any FSA time credits because it has determined that he is an ineligible prisoner under 18 U.S.C. § 3632(d)(4)(D)(lxv).  It based this determination on his sentence relating to his heroin offense in which  "the sentencing court f[ound] that [he] was an organizer, leader, manager, or supervisor of others in the offense."  *Id.*  Maddox disputes that he is ineligible.  He also argues that, even if he is ineligible to receive FSA

5

time credits, the BOP should be equitably estopped from denying him the credits.

Maddox's petition fails on both arguments.

## A.    Eligibility for FSA Time Credits

Maddox contends that Section 3632(d)(4)(D)(lxv) of the FSA's ineligible prisoner provision does not apply to him.  The Court disagrees.

Section 3632(d)(4)(D)(lxv) states, in relevant part, the following:

> A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:
> …
>> 21 U.S.C. 841(b)(1)) … relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, dispense, or knowingly importing or exporting, a mixture or substance containing a detectable amount of heroin if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.

This section clearly applies to Maddox.  He is serving a sentence for a conviction that clearly falls within 21 U.S.C. § 841(b)(1), namely possession with the intent to distribute a substance containing a detectable amount of heroin.  His judgment shows that he pleaded guilty to 21 U.S.C. § 841(b)(1)(B). Dkt. 9-4.  His plea agreement and PSR reflect that he admitted that he was "an organizer, leader, manager, or supervisor" of others in the offense under the Sentencing Guidelines by stipulating to a two-level enhancement under U.S.S.G. § 3B1.1.

Maddox does not contest he is serving a sentence for a conviction of 21 U.S.C. § 841(b)(1)(B) or that the sentencing Court found that he admitted to at least one of the provisions of § 3B1.1.  His sole argument against the

6

straightforward application of Section 3632(d)(4)(D)(lxv) to his sentence is what he perceives as an inconsistency in his plea agreement and PSR. Specifically, the plea agreement states that he was stipulating to a "two-level enhancement for the defendant's role in the offense" under § 3B1.1*(b)*. Dkt. 9-3 at 4–5 (emphasis added). But the PSR states that he received a two-level enhancement under § 3B1.1*(c)* because he organized and led two others in connection with the drug distribution. Dkt. 10 at 12 (emphasis added). Maddox argues that this purported discrepancy shows that his enhancement was not actually under subsection (b) but under subsection (c). The Court is not persuaded.

At the time of his sentencing, § 3B1.1 provided:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a)    If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b)    If the defendant was a manger or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

United States Sentencing Commission 2016 Guidelines Manual, U.S.S.G. § 3B1.1 (eff. Nov. 1, 2016, to Oct. 31, 2018), *available* at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2016/GLMFull.pdf (last visited Mar. 26, 2026). There is overlap in

these subsections.  Subsection (a) and (b) both apply to crimes involving "five or more participants" but subsection (a) applies only to an "organizer or leader" and subsection (b) applies only to a "manager or supervisor."  Subsection (c) applies to any "organizer, leader, manager, or supervisor" for any crime (regardless of the number of participants).  Thus, in stipulating to a § 3B1.1 enhancement, Maddox stipulated that he was an organizer leader, manager, *or* supervisor of others when he violated 21 U.S.C. § 841(b)(1)(B).

Maddox's argument about the discrepancy between subsection (b) and (c) in his plea agreement and PSR fails.  First, the PSR's citation to § 3B1.1(c) on page 7 appears to be a typo.  Page 1 of the PRS cites to § 3B1.1(b).  *See* Dkt. 10 at 6.  So, there likely is no discrepancy between the plea agreement and the PSR.  Second, and more fundamentally, the citation discrepancy is a distinction without a difference for purposes of applying Section 3632(d)(4)(D)(lxv) to Maddox's FSA ineligibility.  Section 3632(d)(4)(D)(lxv) is written in the disjunctive: the sentencing court needed to have found that he was "an organizer, leader, manager, *or* supervisor."  It does not matter which.  Section 3632(d)(4)(D)(lxv) applies in any case. A finding of only one of these roles suffices to render him ineligible for FSA credit.  Thus, by agreeing to either subsection (b) *or* (c) of § 3B1.1(b), he admitted to being "an organizer, leader, manager, *or* supervisor." That is all that Section 3632(d)(4)(D)(lxv) requires.

**B.    Equitable Estoppel**

Statutory ineligibility aside, Maddox argues the BOP should be estopped from denying him FSA credit time because he relied on BOP staff representations

that he was eligible to enroll in classes and take a prison job to earn FSA time credits.  Dkt. 15 at 2.  Whether an ineligible prisoner may establish a right to FSA credit time under a theory of equitable estoppel appears to be an issue of first impression within the Seventh Circuit.  Neither party has cited any case law from the Seventh Circuit suggesting that equitable estoppel may apply in a habeas action to require the BOP to give an inmate time credits for which he is statutorily ineligible.  Instead, they cite to *Murphy v. Hood*, 276 F.3d 475, 477 (9th Cir. 2001), in which the Ninth Circuit "assum[ed] without deciding that estoppel may be invoked against the government" in a habeas case on facts that are similar but not on all fours with this case.[1]

*Murphy* is not a FSA case, but it addressed a similar good credit time statute, 18 U.S.C. § 3621(e)(2)(B).  This statute reduces a prisoner's sentence by up to one year upon successful completion of a BOP residential drug treatment program.  In *Murphy*, the habeas petitioner enrolled in and was admitted by the BOP to such a program.  Upon completion of the program, he would have been eligible for a one-year sentence reduction. *Id.* at 476. The petitioner was statutorily eligible to participate in the program and began participating, including completing 500 hours of residential treatment. *Id.* at 477. The BOP

---

[1] Maddox also cites *Ramirez v. Phillips*, No. 2:23-cv-cv002911-KJM-JDP, 2023 U.S. Dist. LEXIS 228778 (E.D. Cal. Dec. 22, 2023), for the proposition that "FSA credits may not be withdrawn." That case is not binding on this Court. In addition, it does not stand for the general proposition that the BOP cannot tell an inmate that he has earned FSA time credits and then later change course. Instead, in *Ramirez*, the BOP took away earned FSA time credits for which the petitioner was statutorily eligible, and estoppel was not at play. Maddox's situation is materially different because he is not statutorily eligible to earn FSA time credits.

later denied him the opportunity to complete the community-based portion of the program because he was determined to be a flight risk based on an earlier conviction for escape. *Id.* That decision meant he could not receive the one-year sentence reduction under 18 U.S.C. § 3621(e)(2)(B). *Id.* The petitioner argued that the BOP should have been equitably estopped from refusing to let him complete the program because the BOP knew about his escape conviction when he was admitted to the program. *Id.*

The Ninth Circuit assumed for the sake of argument that estoppel might apply but concluded that it did not in the petitioner's case. The Ninth Circuit defined the elements of equitable estoppel on the government as follows:

> The elements of equitable estoppel are that (1) the party to be estopped knows the fact, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is intended, (3) the party invoking estoppel must be ignorant of the true fact, and (4) he or she must detrimentally rely on the former's conduct . . . . Petitioner must also demonstrate that the government engaged in affirmative misconduct going beyond mere negligence and that the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.

Applying this standard the Ninth Circuit concluded: "Although [the petitioner] had completed a significant portion of the BOP's drug treatment program, participation in a drug treatment program is a benefit and can hardly be said to have disadvantaged [him]." *Id.* at 478.

The Ninth Circuit's government estoppel test is not binding on this Court. And both parties overlook the Seventh Circuit's well-established approach for considering estoppel arguments against the government:

10

> equitable estoppel may only lie against the government in a small set of cases: "when the traditional elements of estoppel are shown and there is affirmative misconduct on the part of the government."

*United States v. Rand Motors*, 305 F.3d 770, 773 (7th Cir. 2002) (quoting *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992)).  Those traditional elements of estoppel are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy*, 965 F.2d at 417.  The critical difference between the Seventh Circuit's approach and the Ninth Circuit's is that the Seventh Circuit does not include any "serious injustice" or "public interest" consideration.  So, this Court will not consider those factors.  In all other respects, the approaches between the Circuits are, essentially, the same.

But there are strong reasons to assume that the Seventh Circuit would not apply the traditional approach and would reject Maddox's equitable estoppel argument outright.  Neither the Supreme Court nor the Seventh Circuit has ever recognized a claim of estoppel against the government.  *Matamoros v. Grams*, 706 F.3d 783, 793–94 (7th Cir. 2013); *Bayari v. Holder*, 560 F. App'x 607, 609 (7th Cir. 2014).  Because of the established rule that people are charged with knowledge of the law, it is not reasonable for a person to rely on a government official's statement when that statement is contrary to the law.  *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63, 66 (1984).  The Seventh Circuit has suggested that the Supreme Court's holding in *Heckler*

11

should be interpreted to mean that one claiming equitable estoppel must show they are entitled to the statutory benefit at issue before estoppel may apply. *Kennedy*, 965 F.2d at 419 n.2 (7th Cir. 1992) (discussing *Heckler*).[2]  As discussed in the previous section of this Order, Maddox is not eligible for credit time under the plain meaning of the FSA.  Regardless of what any BOP staff member purportedly told him, Maddox has not shown that he is entitled to a benefit that Congress has plainly prohibited.  So, he cannot jump the initial hurdle the Seventh Circuit submits he must.  *See id.*

The Seventh Circuit's suggestion in *Kennedy* that a preliminarily showing of entitlement to a statutory benefit as a pre-requisite to arguing estoppel is well-founded.  Serious questions of sovereign immunity and separation of powers arise if prisoners may obtain benefits for which Congress has plainly stated they are ineligible.  Consider sovereign immunity.  Generally, the government cannot be sued unless it has consented to suit.  *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009).  But a free-standing cause of action in equity that confers a benefit to which Congress has never consented is an end-run around this foundational principle of government sovereignty.  Consider separation of powers.  As one commentator put it, "[a] misinformed or overly generous bureaucrat [or prison officer] should not be able to . . . rewrite the laws enacted by Congress . . . ." Jean F. Rydstrom, Annotation, *Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies*, 27 A.L.R.

---

[2] Respondent cites out of circuit case law for this same proposition. Dkt. 9 at 7 n.1 ("In the context of other sentencing credit mechanisms, courts generally do not apply equitable estoppel in a manner that overrides statutory authority.").

12

Fed. 702 § 2[a] (1976).  Indeed.  A free-standing equitable estoppel claim against the government would allow just that by granting benefits to those whom Congress did not intend.

These concerns dissipate if this Court simply follows the Seventh Circuit's suggestion in *Kennedy* that Maddox must show that he is entitled to the statutory benefit of FSA credit time before arguing equitable estoppel.  *Kennedy*, 965 F.2d at 419 n.2 (7th Cir. 1992).  So, that's what this Court decides to do here.  Maddox cannot obtain habeas relief on a theory of equitable estoppel because he is an ineligible prisoner under Section 3632(d)(4)(D)(lxv).

Even assuming without deciding that Maddox could theoretically obtain FSA credit time on a theory of equitable estoppel, Respondent argues that Maddox can prove neither the traditional equitable estoppel elements nor affirmative misconduct.  Dkt. 9 at 6–7.  The Court agrees.

First, the BOP misinforming Maddox of his eligibility for FSA time credits and then correcting its mistake is not "affirmative misconduct."  The Seventh Circuit has stated that the misconduct must be "egregious" to trigger equitable estoppel consideration—something akin to a conspiracy to trap unsuspecting victims.  *E.g.*, *Gutierrez v. Gonzales*, 458 F.3d 688, 693 (7th Cir. 2006).  Maddox's predicament—unable to earn FSA time credits—is not that.  His situation is precisely what Congress had in mind when it made inmates like him ineligible for such time credits.[3]  There is no evidence in the record suggesting that any

---

[3] Maddox directs the Court to a 1999 decision from the U.S. District Court for the District of Oregon to support his position on this point. In that case, *Dowling v. Crabtree*, 58 F. Supp. 2d 1172, 1173 (D. Ore. 1999), the petitioner completed a residential drug

13

misrepresentation by the BOP was "affirmative" as opposed to merely inadvertent, or at worst, negligent. It is certainly not "egregious." *Id.* Similarly, Maddox says that it is "well known" that prison-level staff cannot change an inmate's release date, so it must be that more highly-ranked BOP officials decided to award him FSA time credits. Dkt. 15 at 3. There is no evidence to support that contention. And again, even if BOP officials above the prison level mistakenly deemed him eligible for FSA time credits, that does not suggest that the mistake resulted from affirmative misconduct.

Second, the activities to which Maddox points to support his reliance claim—that is, participating in classes and working a prison job in reliance on the BOP's misrepresentations—are *benefits,* not detriments. He fails to explain how rehabilitative programing harmed him. He never suggests that he would not have taken the classes or worked a prison job if he had known he was ineligible for FSA time credits. Notably, even though the classes and job ultimately did

---

and alcohol program that the BOP determined did not meet all the requirements for receiving a sentence reduction. The BOP initially told the petitioner that he did not need to reenroll in the treatment portion of the program in order to receive a sentence reduction. *Id.* But, nearly two years later, as the petitioner was about to be released to prerelease custody, the BOP changed its mind and interpreted its regulations to determine that the program he completed did not meet the criteria for early release. *Id.* By that time, he did not have enough time remaining on his sentence to reenroll in the program and receive a sentence reduction. *Id.* The court held that an injustice would result if the BOP were not estopped from denying him early release because the BOP's actions caused the petitioner to lose his chance to reenroll in the program in time to receive the sentence reduction. *Id.* at 1174. The *Dowling* opinion is not binding on this Court. It is fundamentally inconsistent with the Seventh Circuit's guidance in *Kennedy,* 965 F.2d at 419 n.2, and the fact that "[t]he Supreme Court has never affirmed a finding of estoppel against the government," *Matamoros,* 706 F.3d at 793–94. Moreover, *Dowling* is distinguishable. There is no evidence in Maddox's case that the BOP's actions caused Maddox to forego other opportunities that would have resulted in his early release or otherwise benefited him.

not allow him to earn FSA time credits, they *did* allow him to earn other benefits under the statute (such as increased telephone and visitation time), and it appears that he may have earned such benefits, as evidenced by the "EBRR Incentive Award" he received on August 5, 2023. *See* dkt. 15-1 at 2. And these benefits are in addition to the general rehabilitative quality of BOP programing and honest work.

## IV.

## CONCLUSION

Maddox is statutorily ineligible to earn FSA time credits, and his claim that the BOP should be estopped from denying him the credits fails. He has not shown that the BOP has erred in calculating his sentence. His petition for writ of habeas corpus under 28 U.S.C. § 2241, dkt. [1], is **DENIED with prejudice**, and his motion for summary judgment, dkt. [13], is **DENIED**.

Final judgment shall issue by separate entry.

   **SO ORDERED.**

Date: 3/26/2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:
CARL MARQUIS MADDOX
11766-041
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
DOJ-USAO
jeffrey.preston@usdoj.gov